1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9    SUSAN KAY TAPIA,

10                 Plaintiff,                          No. CIV S-05-1791 GGH

11          vs.

12   MICHAEL J. ASTRUE,[1]                      ORDER
     Commissioner of
13   Social Security,

14                 Defendant.
15   _____/

16              Plaintiff seeks judicial review of a final decision of the Commissioner of Social

17   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

18   under Title XVI of the Social Security Act ("Act").[2]  For the reasons that follow, plaintiff's

19   Motion for Summary Judgment or Remand is DENIED, the Commissioner's Cross Motion for

20   Summary Judgment is GRANTED, and the Clerk is directed to enter judgment for the

21   Commissioner.

22

23          [1] Michael J. Astrue became Commissioner on February 12, 2007.  Accordingly, he
     should be substituted as defendant in this suit.  Fed. R. Civ. P. 25(d)(1).  No further action need
24   be taken by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §
     405(g).
25
            [2] The case is before the undersigned pursuant to 28 U.S.C. § 636(c) (consent to proceed
26   before a magistrate judge).

                                                    1

BACKGROUND

Plaintiff, born January 22, 1962, applied on September 3, 2003 for disability

benefits.  (Tr. at 45.)  Plaintiff alleged she was unable to work since December 1, 1990, due to

pain, major depression, borderline personality disorder, obesity, scoliosis, multilevel

degenerative changes of the thoracic lumbar spine, fibromyalgia and sleep apnea.  (Tr. at 37, 12.)

However, plaintiff had evidently engaged in substantial gainful activity as late as September

2003.

In a decision dated June 15, 2005, ALJ Antonio Acevedo-Torres determined

plaintiff was not disabled.  The ALJ made the following findings:[3]

> 1.   The claimant has not engaged in substantial gainful activity
>      since September 3, 2003.

_____

[3]  Disability Insurance Benefits are paid to disabled persons who have contributed to the
Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in
part, as an "inability to engage in any substantial gainful activity" due to "a medically
determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
> Step one:  Is the claimant engaging in substantial gainful
> activity?  If so, the claimant is found not disabled.  If not, proceed
> to step two.
> Step two:  Does the claimant have a "severe" impairment?
> If so, proceed to step three.  If not, then a finding of not disabled is
> appropriate.
> Step three:  Does the claimant's impairment or combination
> of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
> 404, Subpt. P, App.1?  If so, the claimant is automatically
> determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past
> work?  If so, the claimant is not disabled.  If not, proceed to step
> five.
> Step five:  Does the claimant have the residual functional
> capacity to perform any other work?  If so, the claimant is not
> disabled.  If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation
process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
burden if the sequential evaluation process proceeds to step five.  Id.

1        2.      The medical evidence establishes that the claimant has
severe neck and back pain, obesity, and depression, but that
2                she does not have an impairment or combination of
impairments listed in, or medically equal to one listed in
3                Appendix 1, Subpart P, Regulations No. 4.

4        3.      The claimant's allegations as to the nature and severity of
her alleged pain and other complaints and functional
5                limitations can not be credited for the above stated reasons.

6        4.      The claimant has the residual functional capacity to
perform work-related activities except for work involving
7                lifting and carrying more than 25 pounds frequently or 50
pounds occasionally (20 CFR § 416.945).

8

9        5.      The claimant's past relevant work as a telemarketer and
cashier did not require the performance of work-related
                  activities precluded by the above limitation(s) (20 CFR §
10               416.965).

11       6.      The claimant's impairments do not prevent the claimant
from performing her past relevant work.
12

13       7.      The claimant was not under a "disability," as defined in the
Social Security Act, at any time through the date of the
                decision (20 CFR § 416.920(e)).

14 (Tr. at 14-15.)

15  <u>ISSUES PRESENTED</u>

16       Plaintiff has raised the following issues: A.  Whether the ALJ Failed to Properly

17 Consider the Conclusions of Plaintiff's Treating Physicians; B.  Whether the ALJ Failed to

18 Properly Address Plaintiff's Obesity; and C.  Whether the ALJ Did Not Properly Address

19 Plaintiff's Credibility.

20  <u>LEGAL STANDARDS</u>

21       The court reviews the Commissioner's decision to determine whether (1) it is

22 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

23 the record as a whole supports it.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1097 (9th Cir.1999).

24 Substantial evidence is more than a mere scintilla, but less than a preponderance.  <u>Saelee v.</u>

25 <u>Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

26 accept as adequate to support a conclusion.'"  <u>Richardson v. Perales</u>, 402 U.S. 389, 402, 91 S. Ct.

1  1420 (1971), quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59 S. Ct. 206

2  (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

3  testimony, and resolving ambiguities."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir.

4  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

5  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

6  <u>Thomas v. Barnhart</u>, 278  F.3d 947, 954 (9th Cir. 2002).

7  <u>ANALYSIS</u>

8          Many problems abound in this case.  The medical records are sparse, and to the

9  extent any mental health treatment by specialists is referenced, they significantly post-date the

10  SSI application in this case.[4]  The onset date alleged by plaintiff (1990) is nowhere supported in

11  the record, and is directly refuted in that substantial gainful activity was performed as late as

12  September 2003.  No medical evidence exists whatsoever that would suggest a cervical

13  impairment as alleged by plaintiff, and the scant objective findings do not suggest any back issue

14  of note save for scoliosis.  One physician referenced possible fibromyalgia, but there are no

15  records which would show that this possible diagnosis was ever seriously pursued.

16          The ALJ has complicated matters by finding alleged neck and back pain as a

17  severe impairment, but of course, pain, in an of itself is not an impairment.  <u>Ukolov v. Barnhart</u>,

18  420 F.3d 1002, 1005 (9th Cir.2005).  And, plaintiff, although referencing this fact, does not raise

19  this mistake as an issue.  In any event, scoliosis, the one condition objectively manifested, may or

20  may not be an impairment which even slightly precludes one from work.  The one X-ray report

21  was essentially unremarkable.  (Tr. 166).  Thus, there is no legitimate finding of a physically

22  severe impairment, and obesity, which can exacerbate a diagnosed physical ailment, is left to

23  stand on its own.  Obesity, in and of itself, can be recognized as an impairment, but unless

24  extraordinary it says little about the ability of a person to perform ordinary work unaccompanied

25

26          [4]  One general practitioner noted possible depression just prior to the filing of the
application, August, 2003, (Tr. 124), but no specialist was seen for a year.

1   with a bodily ailment, e.g., professional football players can be obese and very functional.

2   Nevertheless, the parties argue about what physician's limitations should be accepted even in the

3   absence of any actionable diagnosis.

4         A.   Whether the ALJ Erred in Rejecting the Opinion of Plaintiff's Treating Physicians

5               Plaintiff claims that the ALJ erred in rejecting the treating opinions of plaintiff's

6   treating psychiatrist at Northgate Point mental health clinic, and plaintiff's treating doctors for

7   physical problems, Drs. Mercado and Johnson.

8               The weight given to medical opinions depends in part on whether they are

9   proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

10  F.3d 1195, 1201 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[5]  Ordinarily,

11  more weight is given to the opinion of a treating professional, who has a greater opportunity to

12  know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th

13  Cir. 1996).

14              To evaluate whether an ALJ properly rejected a medical opinion, in addition to

15  considering its source, the court considers whether (1) contradictory opinions are in the record;

16  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of

17  a treating or examining medical professional only for *"clear and convincing"* reasons.  Lester ,

18  81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining professional may

19  be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

20  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

21  examining professional's opinion (supported by different independent clinical findings), the ALJ

22

23        [5]  The regulations differentiate between opinions from "acceptable medical sources" and
    "other sources."  See 20 C.F.R. §§ 404.1513 (a),(e); 416.913 (a), (e).  For example, licensed
24  psychologists are considered "acceptable medical sources," and social workers are considered
    "other sources."  Id.  Medical opinions from "acceptable medical sources," have the same status
25  when assessing weight.  See 20 C.F.R. §§ 404.1527 (a)(2), (d); 416.927 (a)(2), (d).  No specific
    regulations exist  for weighing opinions from "other sources."  Opinions from "other sources"
26  accordingly are given less weight than opinions from "acceptable medical sources."

1    may resolve the conflict. <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

2    <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

3    weigh the contradicted treating physician opinion, <u>Edlund v. Massanari</u>, 253 F.3d 1152 (9th Cir.

4     2001),[6] except that the ALJ in any event need not give it any weight if it is conclusory and

5    supported by minimal clinical findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999)

6    (treating physician's conclusory, minimally supported opinion rejected); <u>see also</u> <u>Magallanes</u>,

7    881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is

8    insufficient to reject the opinion of a treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

9          The court is hard pressed to find any treating  physicians in this case.

10   Remarkably, there are no medical records more distant than a month away from the SSI

11   application.  Most of the medical records proffered by plaintiff were created well into the

12   application/adjudication process.  In other words, this case has all the earmarks of medical

13   "treatment" for the purpose of presenting such evidence in an adjudicative proceeding.  The

14   timing of medical treatment in this case should have some play in the analysis.

15          In this case, the ALJ rejected the opinion of the claimed treating psychiatrists by

16   stating that its finding of markedly impaired mental functioning with a GAF of 50[7] had to be

17   rejected because it was based on plaintiff's subjective complaints and not on any objective

18   clinical findings.  (Tr. at 14.)  Instead, the ALJ stated that he relied on the independent

19   assessment of the consulting examining psychiatrist, Dr. Joyce, who assessed a GAF of at least

20   \\\\\

---

22      [6]  The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis; (5) consistency; (6) specialization. 20 C.F.R. § 404.1527

24      [7]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 41-50 indicates: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."

1 70.[8]  This psychiatrist thought plaintiff could perform routine work activity with continued

2 sobriety.  (Id. at 14-15.)  The ALJ thought this opinion was more reliable and stated that he gave

3 it more weight because it was more accurate and consistent with the record.  (Id. at 15.)

4 　　　　These stated reasons are specific and legitimate.  The consulting psychiatrist's

5 opinion upon which the ALJ relied and summarized, indicated:

6 　　　　average intelligence with no evidence of psychological distress or
　　　　of any speech or thought disorder or intoxication.  She was fully
7 　　　　oriented and was able to perform simple calculations and
　　　　demonstrated good immediate recall, intact judgment and
8 　　　　comprehension.  The examiner noted that the claimant's poly-
　　　　substance abuse was in remission and that there was no evidence of
9 　　　　a primary mood, thought or anxiety disorder, though the examiner
　　　　found a borderline personality disorder.  Her GAF (global
10 　　　　assessment functioning) was rated at least at 70 and with her
　　　　continued sobriety she would be able to complete a workday and
11 　　　　workweek without interruption and was otherwise capable of
　　　　handling usual work situations and social interactions though her
12 　　　　personality disorder might impair her interpersonal relationships.

13 (Tr. at 13, 109-114.)

14 　　　　In contrast, the "treating" psychiatric records indicate that the mental health record

15 is fairly sparse.  Plaintiff received treatment beginning only in June, 2004, and reportedly took

16 her medications only about half the time.  When new medications were suggested to her, she

17 replied that she did "not want any changes right now."  (Tr. at 188.)  Although plaintiff was

18 diagnosed with major depression and borderline personality disorder by her treating psychiatrist,

19 plaintiff reported that Celexa was helpful for her depression and mood swings.  (Tr. at 200, 204.)

20 It should also be noted that plaintiff reported to the treating psychiatrist that she quit her job due

21 to physical problems, not due to mental problems.  (Id. at 199.)

22 　　　　The ALJ was free to reject this opinion and rely instead on Dr. Joyce's opinion,

23 which is also supported by the psychiatric review technique form completed by the DDS

24 _____

25 　[8] A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some
26 meaningful interpersonal relationships."  DSM IV at 32.

7

1  physician on April 14, 2004.  This opinion was that plaintiff's mental impairments, affective

2  disorder, and personality disorder, were not severe.  (Tr. at 144.)  Furthermore, although plaintiff

3  had "intense and unstable interpersonal relationships and impulsive and damaging behavior," she

4  was only mildly limited in maintaining social functioning and maintaining concentration,

5  persistence, or pace.  (Id. at 151, 154.)

6          Turning to treating sources Drs. Mercado and Johnson, and assuming for the

7  moment that they are bona fide treating physicians who followed plaintiff's physical ailments,

8  the ALJ did not specifically reject their opinions, and he therefore erred in failing to follow

9  required Ninth Circuit precedent.  He made only a general statement in rejecting sources other

10 than Dr. Joyce, the consultant psychiatrist, and the residual functional capacity assessment by the

11 SSA doctor: "the undersigned must reject the more extreme limitations proffered and purport to

12 show that the claimant can not stand for more than 45 minutes, sit more than half an hour, lift

13 more than 5 pounds or otherwise handle the standing and walking requirements of a full range of

14 'medium' work."  (Tr. at 14.)  This reason is not specific and legitimate, especially since these

15 more extreme limitations contradict Dr. Carlisle's opinion which found that plaintiff could lift

16 and carry 25 pounds frequently, stand or walk for six hours, and sit for six hours.  Dr. Carlisle's

17 limitations included the need to alternate sitting and standing periodically, and limit kneeling,

18 crouching, and stooping.  (Tr. at 107.)

19          A review of the record in regard to plaintiff's physical impairments indicates that

20 the ALJ's error was harmless, however.  An error which has no effect on the ultimate decision is

21 harmless.  Curry v. Sullivan, 925 F.2d 1127, 1121 (9th Cir. 1990).  First, as referenced

22 previously, no cognizable *physical* impairment, save potential obesity, has been found.

23 Undaunted by this finding required by Ninth Circuit law, the parties go on to argue, in essence,

24 "what if" plaintiff has some cognizable impairment, what is her correct residual functional

25 capacity.  This cannot be properly accomplished as anything the court would hold would be an

26 advisory opinion.

8

1        Nevertheless, even if obesity is recognized as *the* impairment, the court notes the

2   paucity of the medical records of "treating" physicians, and this paucity would stand as legitimate

3   and specific reason to not accept the opinions on residual functional capacity.  First of all, none

4   of plaintiff's physicians directly relate plaintiff's obesity to any specific limitation.  Neither Dr.

5   Johnson nor Dr. Samuelson referenced obesity.  (Tr. 115-125).  Ironically, one of plaintiff's listed

6   problems was "an unintentional weight *loss*."  (Tr. 115).  Only the Commissioner's consultative

7   examiner remarked on plaintiff's morbid obesity, and he found that such did not preclude her

8   from performing medium work.

9        In fact, there are very few objective records to support the limitations set by Drs.

10  Mercado and Johnson.  Dr. Mercado's files contain a form entitled, "General Assistance Program

11  Work Limitations RT Evaluation," which states that plaintiff can only sit, stand or walk for 4.6

12  hours in a work day, lift five pounds overhead, and lift twenty pounds to her waist.  (Tr. at 176.)

13  Plaintiff could not work around dangerous machinery, work at heights, be exposed to

14  dust/lint/fumes, drive automotive equipment, work outside year round or work in confined

15  spaces.  In sum, plaintiff was unable to work.  (Id. at 177.)  The basis for this evaluation was

16  chronic low back pain, depression, and dizziness.  (Id. at 176.)

17       Nevertheless, Dr. Mercado's files on plaintiff consist of less than 20 pages to

18  cover an almost two year time period, and for which the only objective diagnostic test pertaining

19  to plaintiff's limited mobility is an x-ray of the lumbar spine.  It showed scoliosis, some anterior

20  vertebral spurring and minimal disc narrowing at L2-3 and L3-4.  The x-ray was otherwise

21  normal. (Tr. at 166.)  There was no x-ray or other imaging of the cervical spine in the record.  If

22  plaintiff's neck and back problems were as severe as claimed, it is surprising that her physicians

23  did not order further studies or work-up.  The court can only conclude if these treating doctors

24  did not think her condition severe enough to warrant any diagnostic studies, the ALJ should not

25  be faulted for any failure to rely on such a sparse record.

26  \\\\\

1    Furthermore, Dr. Mercado's opinion of disability as well as Dr. Samuelson's and

2  Dr. Johnson's conclusions of disability without discussion (Tr. at 118,[9] 124), are not binding on

3  this court.  "A statement by any physician that the claimant is disabled or unable to work is a

4  conclusion on the ultimate issue to be decided . . . and is not binding on the [ALJ] in reaching his

5  determination as to whether the claimant is disabled within the meaning of the [Act]."  Murray v.

6  Heckler, 722 F.2d 499 (9th Cir. 1983), (citing Burkhart v. Bowen, 856 F.2d 1335 (9th Cir. 1988),

7  20 C.F.R. §§ 404.1527 and 404.927); accord, Magallanes v. Bowen, 881 F.2d 747, 750-51 (9th

8  Cir. 1989).

9    The SSA's residual functional capacity assessment supports Dr. Carlisle's

10  opinion.  That evaluation, dated July 22, 2004, finds that plaintiff can lift 50 pounds occasionally,

11  25 pounds frequently, stand, and/or walk for six hours with a break every two hours to sit, and sit

12  for six hours at a time, with a ten minute break every two hours to stretch.  There were no other

13  limitations.  (Id. at 136-39.)  Dr. Carlisle's opinion, along with this evaluation, constitutes

14  substantial evidence to support the ALJ's finding.

15    B.  Whether the ALJ Failed to Properly Address Plaintiff's Obesity

16    Plaintiff alleges the ALJ failed to consider obesity at steps four and five of the

17  sequential evaluation process.

18    Obesity must be considered as a factor contributing to disability, unless the ALJ

19  makes a specific factual finding based on substantial evidence that the obesity is remediable.

20  Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).  SSR 02-01p makes clear that obesity is a

21  disease that must be considered when evaluating disability, and the "combined effects of obesity

22  with other impairments can be greater than the effects of each of the impairments considered

23

24    [9]  The statement of disability written in a record by Dr. Johnson is vague as to whether
plaintiff reported that she was disabled or whether it was the physician's opinion that she was

25  disabled.  (Tr. at 118.)  See Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995) ("an opinion
of disability premised to a large extent upon the claimant's own accounts of his symptoms and

26  limitations may be disregarded, once those complaints have themselves been properly
discounted").

1    separately."  The ALJ "will evaluate each case based on the information *in the case record*."

2    (Id.) (emphasis added).  Even if it is ultimately determined that listing equivalence is not

3    satisfied, the ALJ must take into account the fact of obesity at the other levels of the sequential

4    analysis.  At step four and five of the sequential analysis, the ALJ should consider obesity in

5    determining RFC and vocational ability:

6               According to the Social Security Rules, in evaluating obesity to
                determine a claimant's RFC, the ALJ's assessment 'must consider
7               an individual's maximum remaining ability to do sustained work
                activities in an ordinary work setting on a regular and continuing
8               basis.' SSR 02-01p (2002).  As with other impairments, the ALJ
                should explain how he determined whether obesity caused any
9               physical or mental impairments.  *See id.*

10   Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

11           In this case, the ALJ specifically addressed plaintiff's obesity in light of her

12   functional capacity.  First, he noted that the consultant who ultimately found plaintiff capable of

13   medium work and upon whom the ALJ relied, stated that plaintiff was morbidly obese at 245

14   pounds. (Tr. at 13.)  Despite this fact, the ALJ then noted, "[h]owever, aside from bilateral

15   muscle spasms of the back the examination revealed normal range of motion of the spine and

16   joints, normal motor strength, sensation and reflexes and normal coordination, gait and the ability

17   to get on and off the examining table and to heel and toe walk without difficulty."  (Id.)  The ALJ

18   then completed review of those findings.  Later in his analysis, the ALJ revisited the issue of

19   obesity.  He stated that he considered her obesity, with a body mass index (BMI) of 40.9, as

20   severe under the National Institutes of Health Obesity Guidelines, referencing also SSR 02–01p.

21   Nevertheless, he noted that plaintiff's treating doctor recommended that she undertake a walking

22   program, and the medical records indicated no severe heart disease or other apparent

23   consequences of her obesity which would impair her ability to perform medium work.  (Id. at

24   14.)

25           Plaintiff objects that the mention of heart disease is irrelevant and plaintiff has

26   arthritis of the lumbar spine (not found by the ALJ and uncontested by plaintiff as an issue)

1   which could very well be impacted by her obesity.  Plaintiff has not come forward with any

2   evidence indicating that her weight impacted her spine, although common sense might suggest

3   such an effect.  Nevertheless, the record does not show any impact on her functioning as a result

4   of her obesity, and in fact Dr. Carlisle after complete examination found that plaintiff could do

5   medium work.  The ALJ's analysis of the impact of plaintiff's obesity on her ability to work was

6   satisfactory.

7         C. <u>Whether the ALJ Properly Assessed Plaintiff's Credibility</u>

8         Plaintiff asserts that the ALJ did not properly address her credibility by finding

9   that her reported symptoms were in excess of the objective medical findings and not a reasonable

10  consequence of her medically determinable impairments, and relying on a relatively old report of

11  daily activities which does not indicate she can do medium work.

12        The ALJ determines whether a disability applicant is credible, and the court defers

13  to the ALJ who used the proper process and provided proper reasons.  <u>See</u>, <u>e.g.</u>, <u>Saelee v. Chater</u>,

14  94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an explicit

15  credibility finding.  <u>Albalos v. Sullivan</u>, 907 F.2d 871, 873-74 (9th Cir. 1990); <u>Rashad v.</u>

16  <u>Sullivan</u>, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

17  supported by "a specific, cogent reason for the disbelief").

18        In evaluating whether subjective complaints are credible, the ALJ should first

19  consider objective medical evidence and then consider other factors.  <u>Bunnell v. Sullivan</u>, 947

20  F.2d 341, 344 (9th Cir.1991) (en banc).  The ALJ may not find subjective complaints incredible

21  solely because objective medical evidence does not quantify them.  <u>Id.</u> at 345-46.  If the record

22  contains objective medical evidence of an impairment possibly expected to cause pain, the ALJ

23  then considers the nature of the alleged symptoms, including aggravating factors, medication,

24  treatment, and functional restrictions.  <u>See</u> <u>id.</u> at 345-47.  The ALJ also may consider the

25  applicant's: (1) reputation for truthfulness or prior inconsistent statements; (2) unexplained or

26  inadequately explained failure to seek treatment or to follow a prescribed course of treatment;

and (3) daily activities.[10]  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1284 (9th Cir. 1996); <u>see</u> <u>generally</u>

SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician

and third party testimony about nature, severity, and effect of symptoms, and inconsistencies

between testimony and conduct, may also be relevant.  <u>Light v. Social Security Administration</u>,

119 F.3d 789, 792 (9th Cir. 1997).  The ALJ may rely, in part, on his or her own observations,

<u>see</u> <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for

medical diagnosis.  <u>Marcia v. Sullivan</u>, 900 F.2d 172, 177, n.6 (9th Cir. 1990).  Absent

affirmative evidence demonstrating malingering, the reasons for rejecting applicant testimony

must be clear and convincing.  <u>Morgan v. Commissioner of Social Sec. Admin.</u>, 169 F.3d 595,

599 (9th Cir. 1999).

      In this case, the ALJ first addressed a daily activities questionnaire, dated

September 10, 2003, in finding that plaintiff could wash clothes, dusts, grocery shops twice a

month, does light cooking, crochets, drives, and takes care of birds and dogs.  (Tr. at 14, 62-66.)

He also stated that her allegations of constant pain were not a reasonable consequence of her

medically determinable impairments.  (<u>Id.</u>)  The ALJ additionally noted the consultative exam by

Dr. Carlisle and this practitioner's notes that plaintiff was a "vague and inconsistent historian."

(Tr. at 13, 103.)  Dr. Carlisle also found that in regard to plaintiff's back and neck pain, her

"functional limitations by history exceed her objective findings on physical exam."  (Tr. at 107.)

      Plaintiff objects to the ALJ's use of the daily activities form rather than the

hearing testimony which was much more recent.  Plaintiff's testimony was that she did not drive

often due to her dizzy spells, but once in a while she drove two or three miles to the doctor's

office.  (Tr. at 216.)  She can walk three houses down the street, but usually just walks outside,

---

[10]  Daily activities which consume a substantial part of an applicants day are relevant. "This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be utterly incapacitated in order to be disabled."  <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1049 (9th Cir. 2001) (quotation and citation omitted).

1  does laundry with help, loads the dishwasher, uses a lightweight vacuum, helps put away

2  groceries, and crochets for short periods.  (Id. at 217-219, 222, 223. ) She can no longer attend

3  church, however, because it hurts to sit for an hour and a half.  (Id. at 222.)  The ALJ may

4  consider prior inconsistent statements in his credibility analysis.  Smolen, 80 F.3d at 1284.

5  Moreover, the ALJ is free to rely on whatever evidence he chooses, even though reliance on

6  other evidence would have caused him to reach the opposite conclusion.[11]  Fair v. Bowen, 885

7  F.2d 597, 604 (9th Cir. 1989).  Credibility findings are the province of the ALJ.  Id.

8        The ALJ also noted plaintiff's unexplained failure to seek treatment or to follow a

9  prescribed course of treatment.  Plaintiff did not follow the practitioner's advice to walk daily,

10  and missed several appointments at the County Mental Health Clinic.  (Tr. at 13, 187).  In regard

11  to pain control, the ALJ noted that plaintiff received only conservative treatment at Del Paso

12  Health Clinic, including anti-inflammatories for sporadic complaints.  (Id. at 12-13).  The record

13  bears out this assessment.  (Id. at 165-83).  This treatment is not consistent with the degree of

14  pain alleged by plaintiff.  In fact, the records indicate that plaintiff's back pain decreased over

15  time.  (Tr. at 174.)  The ALJ's credibility analysis was proper under the Ninth Circuit standards.

16  CONCLUSION

17        ACCORDINGLY, plaintiff's Motion for Judgment for Summary Judgment or

18  Remand is DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED,

19  and the Clerk is directed to enter Judgment for the Commissioner.

20  DATED: 3/13/07

                       /s/ Gregory G. Hollows

21

                       _____

22                         GREGORY G. HOLLOWS
                       U.S. MAGISTRATE JUDGE

23  GGH/076 - Tapia1791.ss.wpd

24

25

26      [11]  Similarly, the ALJ was free to rely on medical evidence of plaintiff's mental health
rather than her testimony.

14